UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,　　　　　　　　　　Case No. 3:18-cr-00098-1

　　　　Plaintiff

　　　　　　　　　　　　　　　　　　　　　　MEMORANDUM OPINION & ORDER

Ronmetrius D. Scott,

　　　　Defendant

Defendant Ronmetrius D. Scott seeks to suppress evidence obtained during and following a traffic stop of a vehicle Scott was driving. (Doc. No. 12). The government opposes. (Doc. No. 14). On August 7, 2018, I held an evidentiary hearing at which the parties also offered oral argument in support of their respective positions. After hearing the arguments of counsel and reviewing the evidence submitted, I conclude the inventory search was permissible under the Fourth Amendment and deny Scott's motion.

### I.　　BACKGROUND

On January 23, 2018, officers with the City of Toledo Police Department initiated a traffic stop of a vehicle which the officers observed did not have a front license plate displayed. Scott was driving the vehicle, and informed Officer Brooke Janowiecki[1], who approached the driver's side of the vehicle, that he did not have a driver's license. The vehicle was registered to Velvet Holden, who was riding in the passenger seat. Janowiecki instructed Scott to exit the vehicle, and Scott

---

[1]　At the time of this incident, Officer Janowiecki went by her maiden name, Barnwiler.

moved to the rear of the vehicle, near Officer Zach Peterman. Scott provided Peterman with his full name and personally-identifying information.

Janowiecki then ran Scott's information through a portal to a law enforcement database located in the police cruiser. Janowiecki informed Peterman that Scott's license was suspended. The officers instructed Holden to exit the vehicle because it was going to be towed, and Peterman conducted an inventory search, which turned up a loaded black 9mm semiautomatic pistol on the floor beneath the rear of the front passenger seat. Scott was arrested and cited for operating a vehicle without a driver's license, and subsequently a criminal complaint was sworn out by a Toledo Police detective, asserting Scott possessed a firearm in violation of 18 U.S.C. § 922(g)(1).

## II. DISCUSSION

Officers may conduct an inventory search of a vehicle that is being impounded, without obtaining a warrant, in order to protect (1) "the owner's property while it remains in police custody," (2) "the police against claims or disputes over lost or stolen property," and (3) "the police from potential danger." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). "A warrantless inventory search may only be conducted if police have lawfully tak[en] custody of a vehicle." *United States v. Hockenberry*, 730 F.3d 645, 658 (6th Cir. 2013) (quoting *United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007)). The inventory search "must be conducted according to standard police procedures." *Smith*, 510 F.3d at 651.

The Toledo Police Department maintains a standard operating guideline concerning the use of towing of motor vehicles. (*See* Gov't's Exhibit 5). That policy requires officers to impound a vehicle if the driver of the vehicle "has a Suspended Operator's License, regardless of the State that issued the suspension or regardless of the type of suspension." (§ 2.3.4, Ex. 5 at 3). Scott seeks to suppress evidence related to the firearm because, he argues, the officers were not permitted to

conduct an inventory search when Scott was cited for driving without a license, and not for driving under suspension.

While it is true Scott was not cited for driving under suspension, the government has established that Scott's license in fact was suspended at the time of his arrest. After Peterman gave Janowiecki his notepad with Scott's information written on it, Janowiecki returned to the police vehicle and ran the information through a police database. (Janowiecki body camera recording at 22:00:45, Gov't's Exhibit 2). After reviewing the results of her search, Janowiecki exited the police vehicle and as was clearly audible on the recording, said to Peterman, "he's suspended." (Ex. 2 at 22:01:15). Janowiecki then instructed Holden to exit the vehicle, and Peterman began the inventory search after informing Holden the vehicle would be towed.

Section 2.3.4 of the towing policy focuses on an individual's status rather than the ordinance or statute noted in the citation issued. That section requires officers to impound a vehicle if the driver "has" a suspended license at the time of the traffic stop. Conversely, section 2.3.3 mandates a vehicle be towed if the driver "is arrested for Operating a Vehicle While Under Influence (OVI)." (§ 2.3.3, Ex. 5). Whatever the reason underlying Janowiecki's decision to issue Scott a citation for no operator's license rather than suspended operator's license, that decision does not impact the course of action mandated by the towing policy.

Nor does it draw into serious doubt the validity of the government's assertion that there was evidence admitted at the hearing, specifically the recording from Officer Janowiecki's body camera, which establishes Scott's suspension. While I cannot read what is displayed on the computer screen as captured by her body camera, I can see a photograph of Scott scrolling across the screen during her apparent record check and can clearly hear Janowiecki tell her partner immediately thereafter that Scott's license was under suspension. Peterman confirmed this communication from

3

Janowiecki during his testimony at the hearing. And neither side has presented any state records documenting the status of Scott's license on that date.

Scott concedes there was probable cause for the initial traffic stop. The search falls within the exception to the Fourth Amendment's warrant requirement and was conducted pursuant to and consistent with a written department policy. *See Hockenberry*, 730 F.3d at 658-59.

### III.    CONCLUSION

Accordingly, Scott's motion to suppress, (Doc. No. 12), is denied.

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge